### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

_____
                                      )
U.S. INVENTOR, INC.,                  )
                                      )
              Plaintiff,              )
                                      )
       v.                             )        Civil Action No. 23-3639 (ABJ)
                                      )
UNITED STATES PATENT                  )
AND TRADEMARK OFFICE,                 )
                                      )
              Defendant.              )
_____)

### <u>MEMORANDUM OPINION</u>

Plaintiff U.S. Inventor, Inc. brought this action against the United States Patent and Trademark Office ("PTO") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking records related to the individual "bonus award payments" made to Administrative Patent Judges ("APJs"). Compl. [Dkt. # 1] ¶ 1. The agency compiled a spreadsheet listing 3,690 bonus payments, including year-end performance bonuses, "gainsharing" awards, "special act" awards, and "time off" awards, and it released the spreadsheet to plaintiff with the rows reflecting the performance bonuses and gainsharing awards completely withheld under FOIA Exemption 6. Ex. 2 to Decl. of Kathryn Siehndel [Dkt. # 12-2] ("Award Spreadsheet"); *Vaughn* Index, Ex. 3 to Decl. of Kathryn Siehndel [Dkt. # 12-3].

Pending before the Court are the parties' motions for summary judgment over whether the agency properly applied Exemption 6. Def.'s Mot. for Summ. J [Dkt. # 12] ("Def.'s Mot."); Pl.'s Mem. in Opp. to Def.'s Mot. & Cross-Mot. for Summ. J. [Dkt. # 14-1] ("Pl.'s Cross-Mot."). The motions are fully briefed. Def.'s Reply in Supp. of Def.'s Mot. & Opp. to Pl.'s Cross-Mot. [Dkt. # 17] ("Def.'s Reply"); Pl.'s Reply in Supp. of Pl.'s Cross-Mot. [Dkt. # 19] ("Pl.'s Reply"); Def.'s

Statement of Undisputed Material Facts [Dkt. # 12-4] ("DSUMF"); Pl.'s Statement of Undisputed

Material Facts [Dkt. # 14-4] ("PSUMF").

For the reasons stated below, defendant's motion for summary judgment will be

**GRANTED IN PART AND DENIED IN PART** and plaintiff's cross-motion for summary

judgment will be **GRANTED IN PART AND DENIED IN PART**. The Court rules in favor of

the defendant with respect to the applicability of Exemption 6 and the withholding of information

identifying which Administrative Patent Judges received performance bonus and gainsharing

awards, but it finds in favor of the plaintiff with respect to segregability, and it will order the release

of additional, non-private information.

## BACKGROUND

The United States Patent and Trademark Office is responsible for granting and issuing

patents. Decl. of Kathryn Siehndel [Dkt. # 12-1] ("Siehndel Decl.") ¶ 3. When a party applies to

the PTO for a patent, the decision of patentability is initially made by a Patent Examiner. *Id.* ¶ 4.

If the Patent Examiner rejects the application, the party can appeal to the Patent Trial and Appeal

Board ("PTAB"). *Id.* PTAB can also decide questions of patentability raised by third parties in

proceedings colloquially known as "AIA proceedings," referring to the Leahy-Smith America

Invents Act, Pub. L. No. 112-29, 125 Stat. 329-331 (2011). *Id.* Administrative Patent Judges are

the individuals authorized to decide the appeals and AIA proceedings that go before PTAB. *Id.*;

PSUMF ¶ 1.

On June 27, 2023, plaintiff sent a FOIA request to the Patent and Trademark Office seeking

"copies of pay records documenting all individual bonus award payments made to each APJ from

October 1, 2011 to present." DSUMF ¶¶ 1–2; PSUMF ¶¶ 2–3; Ex. 1 to Pl.'s Cross-Mot. [Dkt.

# 14-3] ("Request Letter") at 1. The request specified that the records "may include multiple

payment records for the same APJ in a single fiscal year," and that plaintiff wanted "records for *each separate* bonus award payment to the APJ, reflecting the amount, the date it was [paid], and . . . the PTO transaction number of the payment." Request Letter at 1 (emphasis in original). The request further sought "the full name of the APJ and the base salary of the APJ at the time the bonus award payment was made." *Id.*

The agency acknowledged receipt of the request on June 28, and it prepared a report that included all awards made to the APJs from October 1, 2011 to August 24, 2023, the date the report was run. DSUMF ¶¶ 3–4, citing Siehndel Decl. ¶¶ 8, 13. The report consisted of a 93-page spreadsheet with 3,690 rows listing each individual award. *Id.* ¶ 13. For each award, the spreadsheet included columns for: the fiscal year, the APJ's name, the APJ's base salary, the award date, the award amount, the award code, and the award description used in the Agency's personnel system. *Id.*

Four types of awards were included in the report. *Id.* ¶ 14. First, there were "[y]ear-end performance bonuses." *Id.* ¶ 14(a). The bonuses were based "based directly on the APJ's annual performance ratings," so, for example, if an APJ received an "Outstanding" rating, they would receive a certain amount of money, while a lower performance rating would result in a lower amount. *Id.* Second, there were "gainsharing awards" based on the APJ's "individual production level" and "rating-based eligibility requirements" *Id.* ¶ 14(b). Third, there were "[o]ther monetary awards," including individual or group "special act awards" that recognize "distinguished achievements or significant contributions." *Id.* ¶ 14(c). And finally, there were "[t]ime off awards" granted "for exceptional contributions that benefit the government." *Id.* ¶ 14(d).

The agency responded to plaintiff's request on September 8, 2023, stating that it had identified responsive records, but that it would withhold the records in their entirety under

3

Exemption 6.  DSUMF ¶ 6; PSUMF ¶ 5; Ex. 2 to Pl.'s Cross-Mot. [Dkt. # 14-3] at 1.  It explained that the information was "directly tied to performance ratings" of the individual APJs, and that it did "little to shed light or contribute significantly to public understanding of the operations or activities of the USPTO."  Ex. 2 at 1–2.

Plaintiff appealed the response to the agency's Office of General Counsel.  DSUMF ¶¶ 8–9; PSUMF ¶ 6; Ex. 3 to Pl.'s Mot. [Dkt. # 14-3] at 1–5.  On October 20, the Office of General Counsel granted plaintiff's administrative appeal in part.  DSUMF ¶¶ 10–12; PSUMF ¶ 7; Ex. 6 to Compl. [Dkt. # 1-1] ("Appeal Letter") at 6.  The decision on appeal explained that only the year-end performance bonuses and gainsharing awards would reveal information regarding the APJs' performance ratings, and therefore, it ordered that the "individual or group special act awards and time-off awards be released, subject to any other applicable FOIA exemptions."  *Id.* at 4–8.[1]  The agency also notified plaintiff that it expected to send the records by November 20, 2023.  Ex. 7 to Compl. [Dkt. # 1-1] at 1.

After a period in which it did not received the agency's revised spreadsheet, plaintiff brought the instant suit on December 7, 2023.  Compl. ¶ 1.  On December 22, the agency released the revised version of the spreadsheet with the special act and time-off awards unredacted, but it continued to withhold the remaining entries – the rows reflecting performance bonus and gainsharing awards – under Exemption 6.  DSUMF ¶¶ 13–14; PSUMF ¶ 11; Pl.'s Resp. to DSUMF ¶ 13.

---

1    The Office of General Counsel affirmed the agency's prior decision to deny plaintiff's request for a fee waiver, but that denial is not at issue in this suit.  DSUMF ¶ 11; Pl.'s Resp. to DSUMF ¶ 11.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

 "The rule governing cross-motions for summary judgment . . . is that neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion." *Sherwood v. Wash. Post*, 871 F.2d 1144, 1147 n.4 (D.C. Cir. 1989) (alteration in original), quoting *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982). In assessing each party's motion, "[a]ll underlying facts and inferences

are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.

## ANALYSIS

The Freedom of Information Act "requires every federal agency, upon request, to make 'promptly available to any person' any 'records' so long as the request 'reasonably describes such records.'" *Assassination Archives & Rsch. Ctr. v. Cent. Intel. Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003), quoting 5 U.S.C. § 552(a)(3). The objective of FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Ross*, 425 U.S. 352, 361 (1976). But in "recognition that the release of certain information may harm legitimate governmental or private interests," the statute provides nine exemptions under which an agency may withhold certain records. *Assassination Archives & Rsch. Ctr.*, 334 F.3d at 57, quoting *Summers v. Dep't of Just.*, 140 F.3d 1077, 1079 (D.C. Cir. 1998) (internal quotation marks omitted).

Exemption 6 of FOIA authorizes an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The primary purpose of the exemption is "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982).

To justify a withholding under Exemption 6, the agency "must show three things. First it must demonstrate that the withheld files are 'personnel [or] medical files [or] similar files.'" *Perioperative Servs. & Logistics, LLC v. U.S. Dep't of Veterans Affs.*, 57 F.4th 1061, 1067 (D.C. Cir. 2023), quoting 5 U.S.C. § 552(b)(6). Second, it "must show that disclosure would compromise a substantial, as opposed to a *de minimis* privacy interest." *Id.*, quoting *Nat'l Assoc.*

*of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2022) (internal quotation marks omitted). Third, it "must show that this privacy interest outweighs the public interest in the release of the records such that disclosure would cause a clearly unwarranted invasion of personal privacy." *Id.*, quoting *Norton*, 309 F.3d at 33 (internal quotations and alterations omitted). The government may carry its burden "by affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (internal quotation marks omitted).

Plaintiff argues that the agency improperly invoked Exemption 6 to withhold the rows in the spreadsheet related to year-end performance bonuses and gainsharing awards. Pl.'s Cross-Mot. at 1. The parties do not dispute that the records are "personnel" or "similar" files with the meaning of Exemption 6. Def.'s Mot. at 8; Pl.'s Cross-Mot. at 6, n. 6. But plaintiff asserts that the APJs do not have a substantial privacy interest in the information, and that even if they did, that interest would be outweighed by the strong public interest in disclosure. Pl.'s Cross-Mot. at 6–19.

## I.    The APJs have a substantial privacy interest in their performance bonuses and gainsharing award information because it reveals their performance ratings.

"[T]he concept of personal privacy" protected by FOIA "is not some limited or cramped notion," *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 165 (2004), but rather, "privacy encompass[es] the individual's control of information concerning his or her person." *U.S. Dep't of Justice v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989). The D.C. Circuit has recognized generally "that an employee has at least a minimal privacy interest in his or her . . . job performance evaluations." *Stern v. Fed. Bureau of Invest.*, 737 F.2d 84, 91 (D.C. Cir. 1984). The interest "arises in part from the presumed embarrassment or stigma wrought by

negative disclosures."  *Id.*  And it "also reflects the employee's more general interest in the nondisclosure of diverse bits and pieces of information, both positive and negative, that the government, acting as an employer, has obtained and kept in the employee's personnel file."  *Id.*

More specifically, the D.C. Circuit has found that government employees have a substantial privacy interest in their performance ratings.  In *Federal Labor Relations Authority v. United States Department of Commerce*, 962 F.2d 1055 (D.C. Cir. 1992), the Court determined whether an agency properly withheld the names of its employees who received an "outstanding" or "commendable" rating on their performance evaluations under Exemption 6.  *Id.* at 1056, 1059. As to the privacy interest, the Court held that the "[agency] employees who received outstanding or commendable ratings have a substantial interest in maintaining the privacy of their evaluations." *Id.* at 1059.  It explained that "disclosure of even favorable information may well embarrass an individual or incite jealousy in his or her co-workers." *Id.*, citing *Ripskis v. U.S. Dep't of Hous. & Urb. Dev.*, 746 F.2d 1, 3 (D.C. Cir. 1984).  It further noted that "a list identifying those employees who received outstanding and commendable ratings reveals by omission the identities of those employees who did not receive high ratings, creating an invasion of their privacy."  *Id.*

The Administrative Patent Judges in this case have a substantial privacy interest in the records that reveal whether they received a performance bonus and gainsharing award because, combined with publicly available information, it would reveal their individual performance ratings.  As defendant's declarant explained, plaintiff already has access to the agency's "annual table of bonus ranges" for 2019, which it posted on its website.  Siehdel Decl. ¶ 14(a).  That table includes a set of recommended ranges dictating the amount of the bonus to be awarded to an APJ based on their performance rating.  *Id.* ¶ 14(a) n.2, citing https://perma.cc/PKJ2-4JNL.  According to the table, an APJ with an "Outstanding" rating should receive a bonus between $8,500 and

8

$10,000, a "Commendable" rating should result in a bonus between $6,000 and $8,000, and a recipient of a "Fully Successful" rating should receive $4,000. *Id.* Using the performance bonus award information that was redacted from the FOIA production and the table, plaintiff could determine the APJ's performance rating by comparing the monetary amount awarded to the recommended range chart. Siehndel Decl. ¶ 39.

The gainsharing awards would similarly reveal the APJs performance ratings. APJs were only eligible to receive a gainsharing award if their most recent performance rating was at least Fully Successful, so revealing the list of APJs who received such an award "would automatically tell a reader than an employee's performance was at least a certain level." Suppl. Decl. of Kathyrn Siehndel [Dkt. # 17-1] ("Suppl. Siehndel Decl.") ¶ 16.

In sum, like the employees in *Federal Labor Relations Authority*, the APJs have a substantial interest in maintaining the privacy of their performance ratings, and that interest would be compromised by the release of information in the Award Spreadsheet identifying the APJs who received performance bonus or gainsharing awards.

Plaintiff asserts that withholding the bonus and gainsharing information "would make dead letter of the civil service regulation providing that performance award information is public by default." Pl.'s Cross-Mot. at 9. But the regulation it points to, 5 C.F.R. § 293.311(a)(4), does not obligate defendant to release the individual award information redacted here. While section 293.311(a) states that "[p]resent and past annual salary rates (including performance awards or bonuses)" will be "available to the public," section 293.311(b) clarifies that it is not meant to undermine or outweigh the exemptions in the FOIA statute or the privacy interests at stake here:

> The Office or agency will generally not disclose information where the data sought is a list of names, present or past position titles, grades, salaries, performance standards, and/or duty stations of Federal employees which, as determined by the official responsible for custody of the information:

> (1) Is selected in such a way that would reveal more about the employee on whom information is sought than the six enumerated items, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy; or
>
> (2) Would otherwise be protected from mandatory disclosure under an exemption of the FOIA.

5 C.F.R. § 293.311(b).

Plaintiff also argues that the privacy interest of the APJs is diminished by the prior release of a dataset by the Office of Personnel Management ("OPM") that disclosed the base salary and total bonus payments for each APJ between 2012 and 2018. Pl.'s Cross-Mot. at 3–4, 7.[2] For one thing, the instant FOIA request covers six additional years for which plaintiff does not have any bonus or gainsharing award information – 2011, and 2019 through 2023. But more to the point, plaintiff is not simply seeking the APJs' total annual bonus compensation; it seeks "records for *each separate* bonus award payment to the APJ," Request Letter at 1, which directly reveals new information – an individual APJ's specific performance rating – that implicates its own set of privacy concerns.

Finally, plaintiff cites *Stern v. Federal Bureau of Investigation*, 737 F.2d 84 (D.C. Cir. 1984), to argue the APJs have a diminished privacy interest in their award information because of their status as government employees with "expansive authority." Pl.'s Cross-Mot. at 10–12. But the facts of *Stern* are inapposite to this case. *Stern* involved a FOIA request for the names of three FBI agents who had been "investigated in connection with a possible cover-up of illegal FBI surveillance activities." 737 F.2d at 86. And the Court's conclusion that revealing the most senior

---

2    Plaintiff provided the Court with a link to view this information online, *see* Pl.'s Cross-Mot. at 3 n.3, but that link appears to be no longer in use and does not show the data plaintiff describes. *See* APJ Compensation Data (2012–2019), Fair Inventing, https://perma.cc/343D-RKC5**.**

agent's name would not be an unwarranted invasion of personal privacy turned on the fact that "[h]e was a higher-level official than the other two employees, and he participated *knowingly* in [a] cover-up." *Id*. at 93 (emphasis in original). So it was not simply the agent's level of authority that prompted the release in *Stern*, and the case has no bearing on the issue before the Court.

## II.    The privacy interest of the APJs outweighs the public interest in the records.

Because the APJs have a substantial privacy interest in the performance bonus and gainsharing award information, the Court must weigh that interest against the public interest in the release of the records. *Wash. Post Co.*, 690 F.2d at 261. The FOIA requester bears the burden of demonstrating the public interest in the disclosure. *See Favish*, 541 U.S. at 172 ("Where the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requested the information to establish a sufficient reason for the disclosure."); *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 497 n.6 (1994) (Exemption 6 public interest inquiry parallels Exemption 7(C) inquiry). The agency must then show that the privacy interest outweighs the public interest. *Perioperative Servs.*, 57 F.4th at 1067.

The only valid public interest under Exemption 6 is the extent to which disclosure would "shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *U.S. Dep't of Defense*, 510 U.S. at 497, quoting *Reps. Comm. for Freedom of Press*, 489 U.S. at 773 (1989). In assessing the public interest, the Court must "examine the nature of the requested document and its relationship" to FOIA's purpose. *Horner*, 879 F.2d at 848, quoting *Reporters Comm.*, 109 S. Ct. at 1481 (internal quotation marks omitted). "[D]isclosure of information affecting privacy interests is permissible only if the information bears *directly* on the character of a government agency." *U.S. Dep't of Health & Hum. Servs. v. Fed. Lab. Rels. Auth.*, No. 92-1012, 1992 WL 390891, at *1 (D.C. Cir. Dec. 10, 1992) (emphasis in

original), citing *Horner*, 879 F.2d at 879 (explaining that "unless the public would learn something directly about the workings of the Government," there is no public interest in disclosure).

Plaintiff offers three theories as to how the public interest would be served by release of the records, two of which focus on whether and to what extent the Patent and Trademark Office violated 5 U.S.C. § 4505a(a)(2) and 5 C.F.R. § 451.106(b) through unlawful award payments. Pl.'s Cross-Mot. at 12–19.

Section 4505a(a)(2) governs "[p]erformance-based cash awards" to agency employees:

> A cash award . . . shall be equal to an amount determined appropriate by the head of the agency, but may not be more than 10 percent of the employee's annual rate of basic pay. . . .  [T]he agency head may authorize a cash award equal to an amount exceeding 10 percent of the employee's annual rate of basic pay if the agency head determines that exceptional performance by the employee justifies such an award, but in no case may an award under this section exceed 20 percent of the employee's annual rate of basic pay.

5 U.S.C.A. § 4505a(a)(2).  And under section 451.106(b): "When a recommended award would grant more than $10,000 to an individual employee, the agency shall submit the recommendation to OPM for approval."  5 C.F.R. § 451.106(b).

Plaintiff states that it is seeking the performance and gainsharing awards "to determine how many APJs received bonuses in excess of 10 percent of their base salary" and whether the agency sought OPM approval for those bonuses.  *Id.* at 12, 15.  But the agency's declarant has explained that there are no records that would fall into that category:  "I have personally reviewed all entries on the 93-page spreadsheet and none of the award payments exceed $10,000 (nor do they exceed 10% of an APJ's salary, which would be more than $10,000)."  Suppl. Siehndel Decl. ¶ 31.  Thus, there is no basis to find that the public interest would be served by releasing the redacted material for the first two grounds proposed by the plaintiff.

Plaintiff also asserts that the bonus and gainsharing awards will "expand understanding of the extent to which APJs receive higher bonuses when making decisions to cancel patents than when deciding to uphold them." Pl.'s Cross-Mot. at 12. It cites a study by Ron Katznelson, Ph.D., which concluded that APJs received higher bonuses when cancelling patents based on OPM data that disclosed the base salary and total bonus payment for each APJ between 2012 and 2018. *Id.*; *see id.* at 3–4 (explaining Dr. Katznelson's research).

While it is true that the public has a "strong interest in the disclosure of . . . conflicts of interest," *id.*, citing *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 264 (D.C. Cir. 1982), plaintiff has struggled to demonstrate how the performance bonus and gainsharing awards bear on that interest. Its pleadings state summarily that the records would allow it to "update [Dr. Katznelson's] analysis to the present and shed light on the monumentally important issue." Pl.'s Cross-Mot. at 14; *see* Pl.'s Reply at 8 ("[T]he bonus information would allow Dr. Katznelson to refine his analysis."). And Dr. Katznelson's declaration does not explain how he would use the data or how the individual awards would advance his analysis. Ex. 1 to Pl.'s Cross-Mot., Decl. of Ron Katznelson [Dkt. # 14-2] ¶ 9 (explaining that the information "would permit [him] . . . to continue to assess" whether APJs are incentivized to cancel patents).

The most the Court can gather from a footnote in plaintiff's cross-motion is that, in plaintiff's view, the "APJ names are critical to this analysis" because Dr. Katznelson's research "showed [a] correlation by researching the results specific named APJs reached in specific cases during the bonus period and comparing those with the bonuses received in that period by these named APJs." Pl.'s Cross Mot. at 14 n.9; Pl.'s Reply at 1. But plaintiff has not articulated how the mere fact that an APJ received an award in a year in which they also decided to cancel a patent reveals a conflict of interest or self-dealing on the party of an APJ, who may have made multiple

13

decisions that year.  The connection is highly attenuated and vague, and the information sought cannot be likened to the lists of organizations in which agency consultants had a financial interest that were at the heart of the *Washington Post* case.  *See* 690 F.2d at 262–64 (finding that there was no substantial privacy interest in the information, and that the public "has a singularly strong interest in the disclosure of consultants' conflicts of interest," since the scientific consultants determined who received "roughly $1 billion per year in cancer research funds").

Since plaintiff has not shown how the information sought bears directly on the public interest identified, the Court finds that the Administrative Patent Judges' privacy interest outweighs the public interest in the withheld information.

### III.    The agency must release all segregable, non-exempt information.

Finally, plaintiff argues that the agency should release any columns within the redacted rows of the spreadsheet that do not implicate the APJs' substantial privacy interest under Exemption 6.  *See* Pl.'s Cross-Mot. at 19 ("To the extent the Court concludes that APJs' privacy interests in their bonus payments outweigh the public interests in disclosure, it should at least order the disclosure of all *other* columns, which are not exempt.").

"Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (collecting cases).  An agency must release "[a]ny reasonably segregable portion of a record," 5 U.S.C. § 552(b), unless the non-exempt portions are "inextricably intertwined with exempt portions" of the record.  *Mead Data Ctr. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977); *see also Johnson v. Exec. Office for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002).  "[T]o demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-

segregability," although it "is not required to provide so much detail that the exempt material would be effectively disclosed." *Johnson*, 310 F.3d at 776, citing *Mead Data Ctr.*, 566 F.2d at 261. "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," *Sussman*, 494 F.3d at 1117, and "[a] court may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. U.S. Dep't of Just.*, 518 F.3d 54, 61 (D.C. Cir. 2008).

Plaintiff's original FOIA request sought records related to every bonus payment, including the amount of the bonus, the date it was paid, the transaction number of the payment, the full name of the APJ, and the base salary of the APJ. Request Letter at 1. The spreadsheet created by the agency lists each individual payment in its own row, with columns across the top of the spreadsheet for the fiscal year of the payment, the full name of the APJ, the "Pay Plan," the "Occ Series," the base salary of the APJ, the award date, the award amount, the award code, and the award description. *See* Award Spreadsheet. The agency maintains it was necessary to redact the entire row reflecting any performance bonus or gainsharing award to protect the privacy interests the Court has recognized above. After reviewing the declarations and the copy of the redacted spreadsheet that has been provided, though, the Court is of the view that more can be disclosed without impinging upon the APJ's privacy.

The agency's declarant asserted that – unsurprisingly – releasing the name column in any row involving a performance bonus or gainsharing award would reveal which APJ received the award, and that the date column would further enable the reader to deduce which awards an employee received if they received more than one. *See* Siehndel Decl. ¶ 43 ("[I]f USPTO had released all of the names . . . of the APJs in the responsive spreadsheet, it would have released

which APJs received awards and . . . which did not."); *id.* ¶ 14 (explaining that the gainsharing awards existed only during the period between 2012 to 2017 and could be identified by date); Suppl. Siehndel Decl. ¶ 38.  She also explained that because PTO released the base salary column for the special act and time off awards, it could not release the same column for the withheld awards because it would link the unredacted names to the redacted ones.  Siehndel Decl. ¶ 43.[3]  As for the rest of the information, the declarant stated simply that "it would be impossible to release an additional data . . . linked to individuals without also resulting in an unwarranted invasion of personal privacy."  Siehndel Decl. ¶ 45.

The Court recognizes that releasing the names in the redacted rows would link individual APJs to the performance ratings in which they have a substantial privacy interest.  But private information is not necessarily intertwined with the information in the other columns of the spreadsheet.  In other words, if one were to look at any particular row in isolation, redacting the name column alone would solve the identification issue, and plaintiffs would not be able to match an APJ with a specific type of award, and what it says about the judge's performance.

However, the rows do not appear in isolation, so there is one other step that needs to be taken before other segregable information can be disclosed.  The current version of the spreadsheet is arranged "alphabetically by APJ last name and then chronologically." Vaughn Index at 1.  This means that where there is a redacted row between two unredacted rows with the same APJ name, the reader can infer that the same APJ received a performance-based or gainsharing award.  Pl.'s Cross Mot. at 20.  That problem can be alleviated if the agency produces a separate spreadsheet

_____

3    Although the Court recognizes that base salary could be a piece of information identifying the APJ, it appears from the current version of the Award Spreadsheet that multiple APJs have the same base salary, and therefore it will not order the redaction of that information.

that includes only the year-end performance bonus and gainsharing awards with the names redacted, as the reader would no longer have adjacent unredacted rows to support an inference.

The Court finds, then, that the agency could reasonably segregate portions of the redacted rows without implicating the privacy interests of the APJs under Exemption 6.  The defendant must release a revised version of the spreadsheet that reflects all of the performance bonus and gainsharing awards, with only the "Full Name" column redacted by February 4, 2026.

## CONCLUSION

For the reasons above, defendant's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART** and plaintiff's cross-motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  January 14, 2026